Filed 3/29/22  Eroshin v. Eroshin CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MARIIA EROSHIN,<br>　　　　Plaintiff and Appellant,<br>v.<br>VLADISLAV EROSHIN,<br>　　　　Defendant and Respondent. | A161957<br><br>(San Mateo County<br>Super. Ct. No. FAM0129914) |

Mariia Eroshin (Mariia) appeals from an order denying her request for renewal of a domestic violence restraining order.  She contends the trial court erred by applying the wrong legal standard and by concluding she did not meet her burden to show she had a reasonable apprehension of future abuse as required for a renewal under Family Code section 6345.[1]  (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).)  We disagree and affirm the order.

---

[1]  Except as otherwise indicated, statutory references are to the Family Code.

1

## BACKGROUND

Mariia and Vladislav Eroshin (Vladislav) were married from 2003 through approximately 2015, when Mariia filed for divorce. They had two children, a son born in 2010 and a daughter in 2014.

## I.

### *The Early Protective and Restraining Orders*

#### A. Criminal Protective Order

On July 25, 2015, Vladislav twisted Mariia's arm and she then called police, who came to the house, investigated, arrested Vladislav, took him into custody and applied to the San Mateo Superior Court for an emergency protective order. The superior court granted the request and issued such a temporary restraining order and criminal protective order.

In August 2015, the San Mateo District Attorney's Office filed a criminal complaint against Vladislav charging him with battery and cruelty to a child by endangering his or her health. About seven months later (in March 2016), that case was dismissed along with the criminal protective order that had been issued and then modified by the court in the meanwhile.

#### B. Initial DVRO Request, Temporary DVRO and Stipulated Stay-Away Order

On July 28, 2015, Mariia filed a request for a Domestic Violence Restraining Order (DVRO) in the same court, which granted a temporary DVRO ordering Vladislav to stay away from Mariia and their children. While the DVRO request was pending, a temporary DVRO and criminal protective order were issued. Thereafter, in September 2015, Mariia and Vladislav, through their respective counsel, negotiated a three-year "Stipulation and Order re Civil Stay Away" (Stay Away Order) but it was a non-CLETS order, meaning it would not be entered in the Department of Justice database or be

2

readily accessible to police.[2]  In exchange for Mariia's dismissal of the application for a CLETS DVRO, the Stay Away Order required that Vladislav be peaceful, respectful, polite and civil to Mariia and the children at all times, prohibited him from contacting Mariia except as necessary regarding the children, and required him to stay 100 yards away from Mariia and the children at all times except for having peaceful contact with her during exchanges and visitation.  It also required Vladislav to complete a "Parenting Without Violence" course and 24 counseling sessions to address his anger issues.  The order did not preclude Mariia from later seeking a CLETS DVRO and provided she could refer to the matters she asserted in support of the request for a DVRO she was dismissing in exchange for the non-CLETS order.

## C. Renewed Request for DVRO

In June 2018, Mariia filed a new request for a DVRO in San Francisco Superior Court.  After a motion for change of venue was heard and granted, the San Mateo Superior Court heard the request in October 2018 and issued a temporary DVRO.  Hearing on the DVRO was set for May 2019, but the matter was continued several times for various reasons.  In the meanwhile, the temporary DVRO was reissued and remained in effect.[3]

---

[2]  CLETS is the acronym for the California Law Enforcement Telecommunications System of the Department of Justice, a computer network that connects public safety agencies across the state to criminal histories, driver records and other data, including restraining orders. (See § 6380, subds. (a), (h).)  At least one court has held that issuance of a "non-CLETS" order is an error of law and that if the court finds acts of abuse, the order it issues must be reported to the Department of Justice and entered in CLETS. (*In re Marriage of Reichenthal* (2021) 73 Cal.App.5th 396, citing §§ 6221, 6380.)

[3] At the first request for a continuance, the commissioner granted the continuance but terminated the temporary DVRO—a decision we promptly

### 1. The DVRO Trial

A bench trial was ultimately held on the DVRO in August 2020 before the Honorable Danny Chou. By that point, the parties had been embroiled in divorce proceedings for about five years and Vladislav had been subject to protective orders of various kinds during that period. Also, the parties' child custody disputes were scheduled to be tried in the Family Law Department two months thereafter.

In her trial brief, Mariia alleged that Vladislav had engaged in acts of domestic violence over the course of their marriage, including throwing a vacuum cleaner at her in 2004; throwing dinner plates at her in 2008; slamming a door in her mother's face in 2012; feeding their son, then a toddler, nuts in 2012 and 2013 when he knew the child had a severe nut allergy; violently grabbing the son in 2013; grabbing her wrist with force and twisting it in during the same incident and on two successive occasions in 2013; taking her cellphone from her on one of those occasions; stuffing a towel into their son's mouth, causing him to have red marks and nosebleeds in 2014; striking and grabbing their son in 2015, and grabbing and squeezing her left forearm and twisting it outward with one hand while squeezing their infant daughter in his other arm in the July 2015 event that led her to call police, report the abuse, obtain medical care and seek a divorce.

Mariia further alleged that since then, and despite the restraining orders in place against him, Vladislav continued to abuse and harass her. She alleged incidents in which he revoked their agreements regarding visitation and threatened to claim she violated the court order to force her to

_____

reversed in June 2019. Apart from the 11-day period between the commissioner's decision and our reversal, temporary DVROs remained in effect from October 2018 through the bench trial on the DVRO in August 2020.

change her schedule and disrupt her time with her children; insulted and harassed her in communications with her and with the children's music school director; sent his (new) wife to exchange the children; and with the new wife, at exchanges of the children, yelled at her, insulted her, pulled one of the children from the car and slammed the car door on her. She alleged that in July 2017, her son reported to his therapist and physician that his father hit him in the face with a plastic bat, resulting in the court ordering father's visitation with his son be supervised. She alleged that in August 2017, during a supervised visit, the supervisor saw him raise his hand and heard it contact his son. In March 2018, she alleged, during a visit with his daughter, Vladislav hit the child on the head with a plastic knife, which the child reported at school, and injured her on a subsequent visit the same month by poking her in the eye with a pencil, which the child told the doctor her father had done because he got mad.

Mariia has not included the transcript of the trial in the record on appeal. We do not, therefore, describe the evidence except as described by Judge Chou in his ruling.[4]

## 2. The DVRO Trial and Ruling

After a five-and-a-half day trial at which both sides presented witnesses and other evidence, Judge Chou issued a thorough oral ruling with many findings of fact. He prefaced the ruling by stating that the testimony and documents he had reviewed as well as his review of the dockets in the Family Court proceeding showed there was "a lot of conflict between the

---

[4] For that reason, and because, as we shall later discuss, Mariia did not appeal Judge Chou's ruling, her attempts indirectly to relitigate the facts as found by Judge Chou in her challenge to the ruling made by Judge Ayoob must fail. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 [failure to provide adequate record on issue requires that issue be resolved against appellant]; see discussion at pages 20-21, *post.*)

petitioner and the respondent and that their divorce proceeding is highly contested, highly contentious and, obviously, has been going on for a fair amount of time now." The court further stated, "the only thing before the court right now is whether there is reasonable proof of abuse and the court is only determining whether petitioner has established reasonable proof of abuse by a preponderance of the evidence . . . ."

Focusing first on Mariia's claims of abuse at the hands of Vladislav, the court found there was "reasonable proof of abuse by [Vladislav] against [Mariia]" as to "the incident on July 25th, 2015" and "the incidents in October and November of 2013." Based on those three incidents, the court found "there is reasonable proof of abuse prior to July 25th, 2015." However, the court observed that based on those incidents, it would not have issued a five-year restraining order that is "as long as the temporary restraining order that is in effect, that has been in effect for two years and two months as well as factoring in—that's not even factoring in the civil stay away order that the parties entered into." Noting that "the civil stay away order that was entered by the parties only permits that petitioner may seek a permanent restraining order if [Vladislav] breached the stipulation and order," the court observed that "this is a problem with these non-CLETS orders, because of the intended delay that is created because of the staleness of the incidents at that point." Nonetheless, the court concluded it was "left, in my view, with first determining whether there's been a breach of the stipulation and order."

The court identified three potential breaches, first, that Vladislav allegedly disturbed the peace in his interactions with Mariia, second, that he allegedly abused the children, and third, that he made contacts in violation of the stipulation and order as well as subsequently issued temporary restraining orders.

As to the first, the court again noted the parties were engaged in "an extremely bitter and contentious divorce and custody issue," which by its nature was "going to be disturbing the peace of [Mariia]." But, the DVPA is not "intended to cover that type of disturbing the peace." Otherwise, a majority of divorce proceedings would give rise to a restraining order. The court rejected Mariia's argument that Vladislav's threat to institute contempt proceedings against her constituted abuse for that reason and noted that the claim seemed disingenuous given that she had actually sought contempt against Vladislav multiple times in the Family Court proceedings.

As to Mariia's claim that Vladislav's threat using the Russian word "uroyu," the court stated it was not clear whether Vladislav used the word, and further that the word had many definitions depending on the context, and some meanings ("see what it gets you" or "do you understand me") were not threatening. Based on the testimony regarding that and several other incidents Mariia contended were violations of the stay away order, the court did not find that these incidents disturbed Mariia's peace in a way that either constituted abuse or violated the stay away order.

As to Mariia's allegations that Vladislav abused the children, the court found the evidence did not establish abuse. Judge Chou described the evidence in some detail and explained why he was unable to conclude from it that Vladislav had intentionally injured either of the children. Besides the conflicting accounts of Mariia and Vladislav, the other evidence was equivocal. The children said different things at different times, the injuries were minor and could have occurred in other ways, and video evidence and third-party testimony did not support the claim that Vladislav was angry or deliberately injured either child.

The only findings the court made that Vladislav violated the stay away order or a temporary DVRO involved oral communications he had with her other than regarding the exchange of the children. The orders required any such communications to be by email. These incidents occurred on March 29, 2018, when he spoke to Mariia while one was picking up a child from the other and said "shame on you" directly to her; in May 20, 2018, when he called her and left a voicemail because he could not find her; and in October 2019 when he orally asked her to attend a birthday party he was holding for their daughter. The court found Vladislav's decisions to speak directly with Mariia on these occasions, instead of emailing her as required by the orders, "mystify[ing]" in light of the clarity of the stay away order's limitation on contact to email, the contempt orders Mariia had previously sought against him and the contentious nature of their dispute.

The court found these were "violations with the contact provisions of both the stay away order and the temporary restraining order," and noted that the caselaw did not "require the court [to] find that the violation of a restraining order . . . is an abuse." The court found these violations "are fairly minor" and "far different than the violations that are discussed" in the caselaw, and that "in the absence of the stay away order and the restraining order, [they] would [not] have constituted an abuse."

Based on the three incidents of abuse that occurred before July 25, 2015, the court said it "probably would not have issued a restraining order that would have lasted over two years." However, the "restraining order violations and stay away order violations, . . . while not as serious as they could be, . . . are still violations and [Vladislav] should have known that, especially given the nature of the proceedings." "Weighing everything," the court granted the restraining order as to Mariia only, and for a period of

8

three months. The court pointed out that "with those additional three months [Vladislav] has now been subject to a restraining order for almost two and a half years based on his conduct in this case already."[5]

Mariia did not appeal Judge Chou's order. For that reason, we take Judge Chou's findings of fact as true and its rulings of law as correct.

## II.

### *Request for Renewal and Renewal Proceeding*

Prior to the expiration of the August 24, 2020 order, Mariia filed a request for renewal of the DVRO. In it, she restated many of the accusations she had made in the DVRO proceeding before Judge Chou, including incidents he found she had proven occurred and constituted abuse and incidents he did not. She asserted Vladislav had violated the August 24, 2020 DVRO order on August 27, 2020, but did not specify how. She requested that the court renew the DVRO "permanently." A hearing date was set for December 9, 2020, and the DVRO was extended until the end of the hearing.

Vladislav filed a response strongly opposing the request. He asserted that Mariia's declaration contained "gross misrepresentations or complete fabrications," and informed the court that there had been a five-and-a-half day trial at which those claims were "thoroughly adjudicated." He contended that Mariia "presented countless allegations of domestic violence" at the trial and that "almost all of [her] allegations were deemed unfounded by the

---

[5] The initial temporary DVRO was entered on July 28, 2015, and the parties then stipulated to the non-CLETS or "stay-away" order on November 9, 2016. The trial court did not include those orders or the period the criminal protective orders were in place in its calculation. When they are included (and except for a two-week hiatus), Vladislav had been under some type of restraining order for more than five years, from July 25, 2015, through the August 2020 trial.

Court," which issued a three-month restraining order based on the finding that Vladislav had violated certain communications restrictions in the prior orders. He stated there had been "no new events or violations since the [August 2020 DVRO] was issued." He denied committing any acts of violence against Mariia, who he claimed had erased video from home surveillance cameras "that would either have proven or disproven her claims." He denied wanting Mariia to suffer emotionally or physically and stated he wanted her to "thrive and move on instead of subjecting [him] to court hearing after court hearing." He contended that Mariia would "exploit [the restraining order] to prevent [him] from accessing the children's school and medical records or from being present at numerous school events or doctor appointments," that she had "successfully excluded me for the past 5 years," and that the custody evaluator had reported and the Family Court Commissioner had found that Mariia had alienated the children from him.

The motion came on for hearing on December 9, 2020, before the Honorable Donald Ayoob. Mariia appeared representing herself, and Vladislav appeared with his attorney. At the outset of the hearing, Mariia stated she was injured and in pain, was in a wheelchair and wanted a continuance. The court asked whether she had notified Vladislav's counsel that she wanted a continuance prior to the hearing, and she responded she had not because she didn't have an attorney. The court asked whether she was currently on pain medication, and she responded that she was. However, she did not recall what medication she was taking. She produced a note from a doctor at an orthopedic urgent care clinic stating that she had been seen there on November 27, 2020, for an injury to her left foot that had significantly reduced her mobility and caused pain and recommending 13 weeks of time off from work and (unspecified) pain medication. When the

10

court asked her if the pain was distracting her thought process, she answered in the affirmative. She explained that she had obtained a temporary order protecting her while the motion to renew was pending, but that order was to expire "today."

The court invited a response from Vladislav's counsel, who told the court Mariia had counsel, that her counsel had sought to be relieved but was denied, that her counsel had filed objections to a statement of decision on December 2, 2020, and that an evidentiary hearing was unnecessary because Mariia had not alleged any new facts since the August trial and the motion therefore could be resolved on the papers, which Mariia had already filed. Counsel further pointed out that after the trial on the DVRO, Judge Chou had wide discretion in deciding how long the DVRO would remain in effect. Unlike cases in which a court issued a lengthy DVRO and was later asked to renew it, here Judge Chou had issued an order with a duration of only three months that was based on Vladislav's violations of communications limitations in 2018 and 2019. In his view, Mariia was seeking a second bite at the apple because, having sought a DVRO of five-year duration and being given a three-month DVRO, she was now seeking to circumvent Judge Chou's decision by seeking a longer order than he was willing to issue.

Counsel for Vladislav argued that his client was being restrained by a temporary DVRO that was issued on an ex parte basis, and that a continuance with a renewal of the temporary order, as Mariia had requested, would subject him to that restraint even longer without the "due process he's entitled to today." Counsel urged the court to decide the matter on the papers "today" because Mariia had not alleged anything new that had not already been presented to Judge Chou.

11

Mariia took issue with counsel's contention that the DVRO was issued only based on communications that violated the previous orders, contended they were based on a finding by Judge Chou of "years of abuse," and explained that the reason Judge Chou had issued such a brief order was because Vladislav had already been restrained for "many years" under prior orders. She claimed that despite Judge Chou having admonished him, Vladislav had violated the communications part of the August 24, 2020 order on August 27, 2020.

The court took a 60-minute recess to review the papers filed by the parties and instructed Mariia to call her physician during the recess to inquire what medications had been prescribed for her current injury.

After the recess, the judge informed the parties he had read their declarations and inquired of Mariia about the medication she was taking. She responded that she was taking ibuprofen and tramadol, with which he said he was familiar.

Turning to the merits, the judge explained, "So the issue that I have is that the declaration in support of the petition does not reference any particular allegation of abuse that took place since the August 24 ruling of Judge [Chou]. So in that sense, it appears to me that what you're actually asking for is a modification of his prior order, which I'm not inclined to do.

"You don't state with any particularity any allegation of abuse arising since the August 24 date. If you wish to make a proffer, meaning what you would intend to prove at a hearing such as this, I'll hear your proffer now."

Mariia responded, stating that Vladislav had "contacted me directly" by email and requested a Facetime call that same day with one of the children. The August 24 order, she claimed, allowed only peaceful communications concerning exchanging the children for visitation, and the email did not

pertain to the exchange of the children because it sought a Facetime with the child on the same day. The court interjected, "Wait a second. I just asked you if the e-mail had any relationship to exchange of the children or contact with the children. Maybe I wasn't specific enough. He's allowed to do that under the order. That's not a violation." Mariia then told the court her attorney had told her "that it is a violation very clearly because, in this case, this is not a court-ordered exchange or visitation."

Counsel for Vladislav provided the court with a copy of the email (which is not in the record on appeal), and after reading it, the court asked Mariia, "You regard that as abuse? That's your point; right?" When she responded that she did, the court stated, "I respectfully disagree." The court later explained that it did not think the email violated Judge Chou's order, which allowed peaceful communication about visitation of the children, and if it was a technical violation, it was not one "worthy of any sanction whatsoever." "He's asking politely by an e-mail to be able to have a FaceTime communication with his son on his son's birthday [¶] . . . [¶] It's an inoffensive e-mail, ma'am. Inoffensive in any fashion. It is unfailingly polite. And I can't imagine any parent who wouldn't make a similar request so that they could have at least some electronic contact with their child on their child's birthday."

Mariia then argued that section 6345 did not require her to prove any additional abuse since the issuance of the DVRO to obtain a renewal of the order. The court responded that it was not mandatory that it renew a restraining order in that circumstance and that whether to do so was in its discretion. It stated it was not inclined to "just wholesale extend [the DVRO]" and in effect modify Judge Chou's "thoughtful decision."

13

Mariia proceeded to reargue allegations that Judge Chou had previously rejected, for example, that she had been abused for 12 years (Judge Chou found incidents of abuse only in 2013 and 2015), and that Vladislav had threatened her, using the Russian word "uroyu" (Judge Chou found she had not proven either that this had occurred or that the word was used in a threatening sense). She argued that her current injury made her more vulnerable to any attack. And she argued that Vladislav had hit her during her pregnancy and had broken her arm—new allegations about acts during their marriage that either were never made at the trial or, if made, were rejected by Judge Chou. (See footnote 4 and accompanying text, *ante,* page 5.)

Judge Ayoob permitted Mariia to argue until she began repeating herself. And after brief remarks by Vladislav's counsel, he allowed her additional time to respond to those comments.

Finding no "evidence of medication so profound as to inhibit her ability to clearly and concisely make her points," the judge implicitly denied the continuance. He also denied the renewal petition. He did so after concluding that Mariia had not met her "burden of persuasion . . . to show by a preponderance of the evidence that any residual fear that you retain is grounded in some objective fact in which a reasonable person would likewise be in that sustained fear [of further physical abuse.]"

Mariia timely appealed from Judge Ayoob's ruling.

## DISCUSSION

Mariia makes several claims of error regarding the trial court's denial of her request to renew the three-month DVRO that had been issued by Judge Chou. Some are claims she was denied due process and an opportunity for a fair hearing, including that Judge Ayoob did not grant the continuance

14

she requested, did not permit her to obtain counsel, did not allow her to bring her support person to counsel's table and did not allow her to present evidence. She asserts three claims of legal error, specifically, that the court applied the standard governing modifications of DVROs rather than standard that applies to renewals; that it erred in relying exclusively on her failure to present evidence of abuse occurring after Judge Chou issued the DVRO; and that it failed to consider any abuse other than physical abuse. Finally, Mariia makes two arguments that are essentially substantial evidence arguments, that the DVRO should have been renewed because it was necessary to protect her and that she met her burden to prove that she had an objectively reasonable fear that Vladislav would abuse her in the future. We take each of these groups of claims in turn.

## I.

### *Mariia Has Failed to Show the Trial Court Committed Procedural Errors or Deprived Her of a Fair Trial.*

#### A. The Trial Court Did Not Abuse Its Discretion in Denying the Continuance or Prevent Her from Obtaining Counsel.

The trial court denied Mariia's request for a continuance, made for the first time at the hearing on her renewal request and without advance notice to Vladislav's counsel. She was using a wheelchair and stated she wanted a continuance because she was "injured and in pain." According to a note she submitted to the court, she had injured her left foot, resulting in pain and decreased mobility, she had visited the clinic 11 days prior to the hearing and the clinic had recommended medication for the pain. When the judge asked her what medications she was on, she was unable to tell him, but later that day after a recess during which she apparently called the physician, she informed the court she was taking ibuprofen and tramadol. The judge stated he was familiar with tramadol. By that point, the judge had heard Mariia

15

argue at some length and presumably could assess whether she was able to make her points effectively, and indeed, the transcript reflects that she was cogent and articulate and knew how to represent herself in a courtroom. The judge expressly found that any medication she was taking did not "inhibit her ability to clearly and concisely make her points." He was in a position to assess her ability and her credibility and was not required to accept her assertion that the medication was impeding her.

In her argument about the continuance, Mariia includes a veritable kitchen sink full of other assertions, for example, that the court should have granted the continuance to enable her to retain counsel. In the renewal proceeding, Mariia did not request a continuance on that ground and thus waived the argument. Even if she had not, we would reject it. Mariia told the court she lacked the financial resources to pay counsel and did not explain how that would have been rectified by a continuance. Moreover, the court might not have credited her assertion that she was without counsel, given the representations by Vladislav's counsel that Mariia had eight different counsel over the course of the litigation between her and Vladislav, that her current counsel had sought to be relieved but the court had denied their motion, and that current counsel had not only represented her at the trial before Judge Chou in August but had continued to represent her at the custody trial in October and filed objections to the tentative statement of decision in the custody matter on December 2, a week before the hearing.

Mariia also complains that the court treated her unfairly in comparison to opposing counsel, that it interrupted her, ignored her and did not allow her to respond to opposing counsel. Mariia does not explain how these assertions have any bearing on her claim that she was denied a continuance. Moreover, they are refuted by the record, which we have carefully reviewed. The court

16

gave Mariia ample time to speak, she spoke at considerable length, and what she describes as interruptions were attempts by the court to ask about or direct her toward arguments that it believed were relevant to her request to renew the DVRO. The court was very patient with Mariia and engaged her in the way one would hope a trial court would engage with counsel or a pro se litigant. The only point at which it prevented her from saying more was at the end of the hearing, after it had ruled, when she continued to argue. And even then, the court informed her she could file a new petition if Vladislav engaged in misconduct that amounted to abuse, or she could talk with her lawyer and seek reconsideration of his ruling and, if a proper showing was made, he would reconsider it. To say that the court "ignored" Mariia could not be further from the truth. And to say it heard only from Vladislav's counsel and not from her grossly distorts the record, the transcript of which shows her arguing for approximately 201 lines altogether and him arguing for about 138; in other words, Mariia had about a third more argument time than Vladislav's counsel. Moreover, contrary to her assertion, the court did not allow either side to interrupt the other's argument.

A "trial court has broad discretion to determine whether good cause exists to continue a hearing date." (*People v. Bentley* (2020) 55 Cal.App.5th 150, 152.) A trial court deciding whether there is good cause for a continuance " 'must consider all of the relevant circumstances of the particular case, "applying principles of common sense to the totality of circumstances." ' " (*Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 169.) We review a trial court's denial of a continuance for abuse of discretion. (*Ibid.*)

Mariia has failed to persuade us that in denying the continuance the trial court abused its discretion or that doing so resulted in any miscarriage

17

of justice. As we have said, she was able to argue cogently and clearly. It was the substance of her arguments, not any lack of clarity or defect in her presentation, that led to the court's denial of her motion for renewal.

### B. Mariia Has Waived the Claim That She Was Entitled to Have a Support Person with Her at Counsel Table.

Citing section 6303, subdivision (d), Mariia contends the trial court erred in denying her request for a support person to sit with her at counsel table. She does not suggest, however, that she asked that the person (who, she says, wheeled her up to counsel's table) be permitted to stay with her as a support person. She says only that, after Vladislav's counsel asked that the person be moved further back in the courtroom and the courtroom deputy had the person move, she informed the court that she needed someone to push her closer to the microphone. From the record, there is no indication of counsel having asked that the individual be moved or of the deputy having asked her to do so. If it occurred, its absence from the record presumably is the product of it having occurred prior to when the judge entered the courtroom. All the record reflects is that when counsel asked the parties to state their appearances, Mariia stated, "I'm in a wheelchair, and I need somebody to move me to the microphone to speak." She made no mention of a "support person" and expressed no desire for someone to play that role. When asked if she was representing herself, she responded that she was, again not indicating she wanted a support person or anything similar.

Mariia's failure to raise the issue in the trial court resulted in a waiver. "Ordinarily the failure to preserve a point below constitutes a waiver of the point. [Citation.] This rule is rooted in the fundamental nature of our adversarial system: The parties must call the court's attention to issues they deem relevant. ' "In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called

18

to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them." ' " (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-29.)  Self-represented litigants are not exempt from the rules governing appellate review.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

We have little doubt that if Mariia had requested that the person who pushed her into the courtroom was her "support person" and that she wanted her to sit at counsel table, Judge Ayoob would have permitted it.  In any event, her failure to make that request to the trial court precludes her from arguing the claimed error now.

### C. The Court Did Not Abuse Its Discretion in Declining to Hold an Evidentiary Hearing.

Mariia claims the trial court abused its discretion by failing to hold an evidentiary hearing, which she requested, and failing to make factual findings.  The trial court heard everything Mariia wanted to say about evidence of any violations of court orders or abuse by Vladislav not already in the record and previously considered by Judge Chou.  Although her petition contained only the conclusory assertion that Vladislav had violated Judge Chou's order on August 27, 2020, the court invited her to explain what had happened, to make an offer of proof.  After she described Vladislav's email to her on her son's birthday asking for a Facetime chat with his son, the court heard her description, reviewed a copy of the email, and concluded there was no violation of Judge Chou's order, which allowed communication about the children and visitation, and that the email in no way constituted abuse.  He described it as "inoffensive in any fashion" and "unfailingly polite." Having concluded the email was not evidence of a violation or abuse, the court asked Mariia if she had more.

19

It was clear from the record, including her response that no such evidence was needed, that she had no evidence of any misconduct or violations by Vladislav after Judge Chou issued his order. Nor in her briefs in this court has she identified any such evidence.[6]

In her opening brief, she cites two pages of the hearing as instances in which the court denied her the right to present evidence. In one, she told the judge she was fearful of Vladislav because he had threatened to harm her, using the Russian word "uroyu." In the other, she told the judge she was fearful because of events in 2013 and 2015 that led to the initial stipulated stay away order. Judge Ayoob reminded Mariia that Judge Chou had already heard the evidence on these matters and, in response to a request by Vladislav's counsel that she be sworn, explained that he did not consider what she was saying as testimony but rather as argument about why she was fearful.

In the renewal hearing, Maria asserted and again in her briefs on appeal asserts, as facts, matters that Judge Chou heard and rejected. For example, she claims that there was "a 12-year history of abuse," when Judge Chou found only three instances of abuse, two in 2013 and one in 2015; that Vladislav threatened her life using the Russian word "uroyu," when Judge Chou did not find he had used that word or had used it as a threat given its multiple meanings. These and other assertions suggests she harbored a fundamental misunderstanding about the effect of a final order she chose not to appeal.

---

[6] As Judge Ayoob pointed out, the statute allows issuance of a renewal without additional abuse since the issuance of the DVRO (§ 6345, subd. (a)), but a renewal is not mandatory in that circumstance. Rather, it is a matter within the court's discretion.

While there is no question that a party seeking renewal of a restraining order may rely on facts found by the court in his or her favor when issuing the original order, he or she may not relitigate facts already adjudicated by the court that issued such an order after a trial, at least when, as here, the order has become final. "If a judgment or order is *appealable*, aggrieved parties *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate court review. [Citation.] This too is a *jurisdictional* principle: Appellate courts have *no discretion* to entertain appellate *or writ* review of appealable judgments or orders from which a timely appeal was not taken." (Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021) ¶ 2:13.) Further, "An appealable order or judgment becomes *final* for all purposes once all avenues for appellate review are exhausted or the appeal time-frame has otherwise lapsed. Thus, the issues determined in an appealable judgment or order from which no timely appeal was taken are *res judicata*." (*Id.*, ¶ 2:13.5, citing authorities; see also *Ritchie, supra,* 115 Cal.App.4th at p. 1290 [in renewal proceeding, trial court should not permit restrained party to challenge truth of evidence and findings underlying initial order, because to do so would contradict principles of collateral estoppel].)

Given these principles, Judge Ayoob correctly took as established the findings made by Judge Chou, including that there were three instances of abuse, involving Vladislav twisting Mariia's arm, two in 2013 and one in 2015; and that Vladislav violated court orders on three occasions prior to the trial, two in 2018 and one in 2019, and that those violations were "fairly minor" and did not amount to "abuse." On these facts, Judge Chou found that a three-month further restraining order was appropriate—a decision Mariia does not claim was error. Indeed, Judge Chou made clear that, but for

21

Vladislav's minor violations of court orders, he would not have issued the DVRO at all because the instances of abuse had occurred more than five years earlier and Vladislav already had been restrained without further abuse for more than two years, which was more than he thought was merited.

Judge Chou's order became final on October 23, 2020, 60 days after the court issued the order and served it on the parties when neither had filed appeals.[7] His findings on the matters Mariia apparently intended to retry as part of the renewal proceeding were res judicata, with the result that she was legally barred from presenting evidence on them and Judge Ayoob was bound by them. Her reference to the "facts" as she sees them and not as Judge Chou found them is improper, and the denial of an evidentiary hearing was appropriate. As to the one bit of new evidence regarding Vladislav's email to her seeking a Facetime chat with his son, she was permitted to explain it and Judge Ayoob reviewed a copy of it. He was not required to allow her to testify about it because he concluded that her assertions, even if true, would not amount to a violation of Judge Chou's order or to abuse under section 6345.

In short, Mariia has failed to establish the need for an evidentiary hearing, much less how she was prejudiced by not being afforded one. Judge Ayoob's decision that no such hearing was necessary was not an abuse of discretion.

---

[7] An order granting or denying a DVRO is in the nature of an injunction and is appealable as an order granting or denying an injunction. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1257-1258; Code Civ. Proc., § 904.1, subd. (a)(6).)

## II.

### *Mariia Has Failed to Show Any Legal Error.*

Mariia's claims that the trial court applied the wrong legal standards in deciding the renewal motion fare no better than her procedural error arguments. Specifically, she contends that the court applied an unspecified standard governing modifications of DVROs rather than the standard that applies to renewals, relied exclusively on her failure to present evidence of abuse occurring after Judge Chou issued the DVRO, and failed to consider any abuse other than physical abuse.

Her claim that Judge Ayoob applied the standard governing modification of injunctions instead of the standard governing renewal of restraining orders has no support in the record. At the very outset of the hearing, the court stated, "The matter is here for hearing on request for a protective order that would be a renewal of a prior order. And that restraining order issued by Judge [Chou]—temporary restraining order issued by Judge [Chou] August 24 is the matter at issue; is that correct?" Vladislav's counsel responded that the judge was correct, except that the order was not temporary but had been issued after a trial. A few minutes later, Judge Ayoob had a similar exchange with Mariia, who stated, "This is, as Your Honor mentioned, a renewal of the permanent domestic violence restraining order that was issued by the judge [Chou] on August 24th, 2020." The court responded, "Okay. And you're seeking to renew that order. Did that order—that order is now expired, but you sought renewal prior to its expiration?" Mariia responded, "That is correct."

Later, Mariia said, "I'm requesting a renewal per Section 6345 of the code, a renewal of the permanent restraining order" and that under that section, "I do not need to show any abuse since the issuance of the order to

23

request a renewal for five years or permanently."  The judge then reviewed the section and responded that it gave him discretion to grant or deny the motion, and that "having read the entirety of Judge [Chou]'s thoughtful ruling in the matter, I'm not persuaded that I should just wholesale extend it and modify his thoughtful decision."  Vladislav's counsel pointed out during the hearing that, "it's clear that under at least two cases, *Ritchie vs. Konrad*—and that's 115 Cal.App.4th 1275—that for purposes of section 6345 of the Family Code, a renewal of a restraining order is not appropriate unless the Court finds by a preponderance of the evidence that the protected party entertains a reasonable apprehension of future abuse and a reasonable apprehension of fear.  And it's quoted at page 1,288.  The reasonable apprehension requirement is an objective requirement, not subjective."

Mariia relies on Judge Ayoob's interest in her claim that Vladislav committed an act of abuse after Judge Chou issued his order.  That the court asked her for an offer of proof regarding the conclusory allegation in her papers about a post-order violation by Vladislav does not persuade us that the court misunderstood the standard governing renewal motions.  This is especially so, given that the court had recessed the proceeding for an hour to read the parties' papers and Judge Chou's order.

When the proceedings resumed, the court made clear it understood the standard under section 6345, stating,

"And the question here—at least in my view, *the question here is, insofar as the last alleged act of violence was over five years ago, whether your continued fear is reasonable under an objective standard.*

"You no longer cohabitate.  Your contacts, such as they are under the restraining order, have been de minimus and in a public setting in every instance that's discussed in any of these papers.  *And your burden of*

24

*persuasion here is to show by a preponderance of the evidence that any residual fear that you retain is grounded in some objective fact in which a reasonable person would likewise be in that sustained fear.*

"That's not a very articulate recitation, but it's my understanding of the question before me. And notwithstanding the absence of evidence other than your allegation about this e-mail on August 27th, which appears to be in compliance of, if not the precise letter of the order, certainly of its spirit, I revert then to Judge [Chou]'s recitation of those instances that preceded his order and whether they might justify sustained fear in a reasonable person of some—that is, fear of further physical abuse, which appears to be your principal contention." (Italics added.)

The court's articulation of the standard was correct.

Further, contrary to Mariia's assertion that the court relied solely on her failure to prove any further abuse occurred since the DVRO was issued, Judge Ayoob considered all of the relevant circumstances, including the facts as found by Judge Chou, the parties' papers, the length of time since any abuse had occurred (more than five years earlier), that Mariia and Vladislav no longer lived together, that in-person contact between them was "de minimus" and public and that there had been no violations of the DVRO since Judge Chou had issued it.

Mariia argued below and argues again here that she was not required to prove additional abuse or violations to obtain a renewal. That is true in the sense that additional abuse is not a legal prerequisite to issuance of a renewal order. Section 6345 provides, in relevant part, that a DVRO "*may be renewed,* upon the request of a party, either for five years or permanently, *without a showing of further abuse since the issuance of the original order*, subject to termination or modification by further order of the court either on

25

written stipulation filed with the court *or on the motion of a party*." (Italics added.) However, as the italicized language indicates and as Judge Ayoob pointed out at the hearing, whether to renew an order without a showing of further abuse is a decision within the discretion of the trial court, again, based on all of the circumstances before it.

Regardless of whether the party seeking a renewal has presented evidence of further abuse, the trial court may renew the protective order for five years or permanently under section 6345 "if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse." (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) "When contested, a request to renew a restraining order should not be granted pursuant to section 6345 simply because the requesting party has 'a subjective fear the party to be restrained will commit abusive acts in the future.' [Citation.] 'The "apprehension" those acts will occur must be "reasonable." ' " (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 332.) "[T]his does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie,* at p. 1290.)

In deciding whether the protected party's fear of future abuse is objectively reasonable, the judge considers all relevant circumstances. Here, those included Judge Chou's thoughtful and detailed oral ruling, including his findings of fact and the reasoning he stated for issuing an order of relatively short duration. (See *Ritchie, supra*, 115 Cal.App.4th at p. 1290 [trial court ordinarily should consider evidence and findings on which initial restraining order was based in appraising risk of future abuse].) Also

relevant are the presence or, as here, absence of any significant changes in circumstances since the initial restraining order was issued. (*Id.* at p. 1291.) Judge Ayoob properly considered all of those circumstances in evaluating whether Mariia's stated fear of future abuse was objectively reasonable and concluding it was not.

Mariia also relies on a statement by Judge Ayoob that it seemed she was asking him to modify Judge Chou's order. The statement does not indicate that Judge Ayoob applied the wrong standard. We view it in the context in which it was made, which was that Judge Chou only three months earlier had considered the evidence on which Mariia sought to rely for the renewal request excepting only the email Vladislav sent her on his son's birthday. Judge Ayoob determined that the email was not abuse. And Judge Chou's findings regarding prior abuse differed significantly from Mariia's description of the "facts." Issuing a five-year or permanent renewal of the protective order Judge Chou issued for only a three-month period would have been tantamount to a rejection of that decision. Indeed, Judge Chou made plain he would not have issued any protective order based on the prior abuse because by the time he ruled Vladislav had already been restrained for a period greater than he thought was merited. He issued the three-month restraining order simply because Vladislav had violated the prior orders on three occasions, all of which were "minor."

Judge Ayoob properly considered these circumstances surrounding Judge Chou's ruling, including the facts Judge Chou found, the recency of his decision and the length of the protective order he issued. Judge Ayoob did not hold that he lacked the authority to renew the DVRO unless Mariia demonstrated further abuse. Rather, he exercised his discretion, found Mariia had not shown an objective basis for fearing future abuse and

27

concluded that a five-year or permanent renewal of Judge Chou's three-month order therefore was not warranted.

Finally, Mariia's argument that Judge Ayoob erred by "considering only physical abuse" and "disregarding the DVPA's full definition of 'abuse' " is without merit. Mariia relies, for this argument, on allegations of non-physical "abuse" that Judge Chou expressly found were not proven or did not constitute abuse, for example, that Vladislav threatened her life by uttering the Russian word "uroyu." She also relies on violations of prior orders that Judge Chou found did not constitute abuse, such as that he called her and left a voicemail inviting her to attend a birthday party for their daughter in May 2018 and said "shame on you" to her in March 2018.

For the reasons we have already explained, Mariia is not entitled to challenge on appeal from Judge Ayoob's denial of her renewal motion the final decision by Judge Chou that she did not appeal. This includes Judge Chou's findings that these allegations, which she had argued at trial were abuse, did not fall within the definition of "abuse" in the DVRO statutes. Further, the record shows that Judge Ayoob carefully reviewed Judge Chou's order and was keenly aware of what Judge Chou had previously decided.

Finally, "[o]n appeal a judgment or order of the trial court is presumed correct. All intendments and presumptions are indulged in to support it on matters as to which the record is silent. The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) Even if the record did not so clearly show the care Judge Ayoob took and his familiarity with the record and the law, Mariia's unsupported assertions would fail to overcome that presumption.

## III.

### *Mariia's Claim That She Met Her Burden of Showing Her Fear of Future Abuse Was Objectively Reasonable Is Unavailing.*

Mariia contends she met her burden of proof to show she had a reasonable fear of future abuse by Vladislav. Stated otherwise, she argues the trial court erred in concluding she had not met her burden. This is a substantial evidence challenge, one that is almost impossible to win.

When a plaintiff fails to carry its burden of proof below and then challenges the sufficiency of the evidence on appeal, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) The appellant's evidence must be " '(1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid.*) It is "almost impossible" for a losing plaintiff to make such a showing and win on appeal, because "unless the trial court makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof." (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Ibid.*)

Further, to prevail on a substantial evidence challenge, particularly one of this kind, an appellant must cite not only the evidence that favors the result she seeks but also "must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is

29

insufficient. The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment. An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.)

Throughout her briefs, Mariia has recited only the facts that favor her position, selectively described, quoted from and at times distorted the discussions and events during the hearing and made assertions that ignore, go beyond, or contradict Judge Chou's prior findings. Her one-sided recitations of alleged facts and failure to cite evidence in the records supporting Judge Ayoob's decision, including Judge Chou's findings of fact, waive any substantial evidence challenge to Judge Ayoob's decision. But even if we were to consider her argument on the merits, ignoring allegations not found true by Judge Chou, we would reject it.

At the hearing before Judge Ayoob, Mariia stated repeatedly that she feared future abuse from Vladislav. But Judge Ayoob concluded she had failed to show her fear was objectively reasonable. Based on Judge Chou's findings of only three instances of abuse, two in 2013 and one in 2015, and the absence of any evidence of abuse acts by Vladislav thereafter, the minor nature of the three restraining order violations found by Judge Chou, the facts that the parties no longer cohabitated and had very little contact, which contact was in public, Judge Ayoob's conclusion that Mariia's fear was not objectively reasonable was supported by substantial evidence. Mariia has fallen far short of showing that the evidence compelled a decision in her favor as a matter of law.

Finally, because we have concluded that the trial court applied the correct standard in deciding the renewal motion and did not abuse its discretion in denying renewal, we need not address Mariia's argument that even if the proper standard was that provided in Code of Civil Procedure section 533 for modification or dissolution of injunctions, her evidence met that standard.

## DISPOSITION

The order of December 9, 2020, is affirmed. Respondent shall recover his costs.

_____

STEWART, Acting P.J.

We concur.

_____

MILLER, J.

_____

MAYFIELD, J.*

*Eroshin v. Eroshin* (A161957)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

32